UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE ALUMINUM TRAILER COMPANY d/b/a ATC TRAILERS, <br><br> Plaintiff, <br><br> v. <br><br> WESTCHESTER FIRE INSURANCE CO., <br><br> Defendant. | CAUSE NO. 3:20-CV-721 DRL-MGG |

OPINION & ORDER

This is an insurance dispute. In Arizona state court, Sidi Spaces, LLC d/b/a BizBox sued The Aluminum Trailer Company d/b/a ATC Trailers for breach of contract and interference with its business expectancies after ATC allegedly sold "knockoff" trailers to BizBox's customers using its design. ATC filed this declaratory judgment action against Westchester Fire Insurance Company to secure a defense and indemnification. Westchester moves to dismiss ATC's complaint, arguing that it owes no coverage for BizBox's lawsuit. The court grants the motion to dismiss.

BACKGROUND

Taking all well pleaded facts as true at this stage, the following facts emerge. In October 2014, ATC contracted to manufacture BizBox-designed trailers for BizBox to sell to its customers (ECF 4, Ex. C ¶ 6). ATC agreed not to use BizBox's design for any other purpose (*Id.* ¶ 11). The contractual relationship seemingly worked well for several years. ATC manufactured approximately 65 to 70 BizBox trailers that BizBox then used to fulfill its purchase orders (*Id.* ¶ 21).

Westchester issued ATC a commercial general liability insurance policy that covered "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" from September 3, 2016 to September 3, 2017 (ECF 4, Ex. A, Cover. B(1)(A); ECF 4 ¶¶ 6-7). The policy defined "personal and advertising injury" as injury arising out of "[i]nfringing upon

another's … trade dress… in your 'advertisement'" (ECF 4, Ex. A, § V(14)(g)), and "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers" (*Id.* § V(1)). The policy also included certain exclusions—particularly here, a "knowing violation" exclusion that barred coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" (*Id.* Cover. B(2)(a)).

In November or December 2018, ATC allegedly sold a "knockoff" trailer, nearly identical in design to the BizBox trailer but with an ATC logo, directly to a BizBox customer (ECF 4, Ex. C ¶¶ 27-29). After this sale, ATC notified BizBox that it would be increasing the price to manufacture trailers under their contract, allegedly in an effort to undercut BizBox's pricing and sell knockoff trailers to BizBox customers (*Id.* ¶¶ 29-35). BizBox learned of the improper sale in January 2019 and immediately filed suit in Arizona (*Id.* ¶ 32; ECF 4 ¶ 13). In February 2019, ATC provided Westchester notice of the BizBox lawsuit, but Westchester denied coverage (ECF 4 ¶¶ 15-16). ATC later filed this action for a declaration of Westchester's duty to defend and indemnify it.

STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1146 (7th Cir. 2010). When reviewing a complaint's adequacy, the court accepts all exhibits attached to the pleading "as part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face and more than just speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though

a plaintiff's claim must be plausible, it need not rise to the level of probable to survive a motion to dismiss. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is plausible enough is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). "[A]llegations in the form of legal conclusions are insufficient," as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012).

## DISCUSSION

The parties agree that Indiana law applies here. In Indiana, an insurer's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996). "An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy." *Property-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC*, 219 F. Supp.3d 868, 873 (N.D. Ind. 2016) (Simon, J.) (citing *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997)). "When the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995); *see also Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).

The court "determine[s] [an] insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation." *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (applying Indiana law). "[I]f the pleadings reveal" or "the underlying factual basis of the complaint" shows "that a claim is clearly excluded under the policy, then no defense is required." *Id.* (internal citations omitted). When there is no possible factual or legal basis on which the insurer might be obligated to

3

indemnify, there is no duty to defend. *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018).

The court gives clear and unambiguous language its plain and ordinary meaning while ambiguous terms are construed against the insurer. *See Sheehan Constr. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 169 (Ind. 2010); *Property-Owners*, 219 F.Supp.3d at 872.

  A. *BizBox Alleged that a Breach Occurred Within ATC's Policy Period.*

To trigger coverage for personal and advertising injury, BizBox must have alleged that it was injured when ATC infringed its trade dress in an advertisement during the policy period. ATC's policy was effective September 3, 2016 through September 3, 2017. Westchester contests whether BizBox's complaint alleges trade dress infringement within the policy period. Because an insurer is excused from defending an insured if no possible factual or legal basis exists for which coverage may be triggered, *Kopko*, 570 N.E.2d at 1285, the court must first determine whether an alleged breach occurred during the prescribed policy period.

BizBox's complaint identifies one specific sale of an alleged knockoff trailer to its customer, which occurred at some point in November or December 2018—outside the policy period. The underlying state complaint also alleges additional sales of knockoff trailers to BizBox customers, without identifying when such sales took place (ECF 4, Ex. C ¶ 28). In its declaratory complaint, ATC alleges these additional sales occurred previous to November 2018—consistent with Bizbox's state pleading (ECF 4 ¶ 14(h); ECF 4, Ex. C ¶ 34).[1] Previously can mean many things: moments ago, decades ago, or at some point during the policy period. Based on the underlying complaint, the court cannot say there is no possible factual or legal basis that Westchester's policy will be triggered, so the court cannot grant the motion to dismiss on this ground. *See Property-Owners*, 219 F. Supp.3d at 873.

---

[1] The underlying state complaint alleges that ATC previously informed BizBox, "on numerous occasions in the past," about customer requests for knockoff trailers (ECF 4, Ex. C ¶ 34).

B.  *BizBox Does Not Allege Facts that Trigger Coverage for Trade Dress Infringement.*

Trade dress refers to a product's total image, including features such as "size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989) (citation omitted). Trade dress merits protection when the "design or packaging of a product . . . acquire[s] a distinctiveness [that] serves to identify the product with its manufacturer or source" in such a way that it gains "secondary meaning." *TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 28 (2001). Examples of protectible trade dress include the shape of a Coca-Cola bottle, *see D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 433 F.Supp.3d 227, 235 (D.N.H. 2020), the red outsole of a Christian Louboutin shoe, *see Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 224-25 (2d Cir. 2012), and the red wax seal on a bottle of Maker's Mark, *Maker's Mark Distillery, Inc., v. Diageo N. Am., Inc.*, 703 F.Supp.2d 671, 704-05 (E.D. Ky. 2010). The bottle's shape, the red design of the sole, and the wax seal signify the origin of these products because their dress has acquired secondary meaning with consumers.

"[A] design or package [that] acquires this secondary meaning, assuming other requisites are met, is a trade dress [that] may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods." *TrafFix*, 532 U.S. at 28. The Lanham Act protects such trade dress. *See id.* at 28-29; *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017). There is an important caveat: trade dress protection cannot be claimed for product features that are functional. *See TrafFix*, 532 U.S. at 29. Thus, a party who asserts trade dress infringement has the burden of proving that the design sought to be protected is non-functional—for instance, showing that the feature is "merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 29-30. Even when a product's design is unusual or idiosyncratic, the design "almost invariably serves purposes other than source identification," so the law ultimately favors competition, reverse engineering, and downright copying if a product remains otherwise unprotected by a recognized

5

intellectual property right (such as a patent or copyright). *Id.* at 29; *see, e.g.*, *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) (using the example of a cocktail shaker shaped like a penguin to show that even unusual product designs are likely understood by consumers "to render the product itself more useful or more appealing," not to identify the maker).

Accordingly, to assert a claim for trade dress infringement, a product manufacturer must establish that (1) the claimed trade dress is primarily non-functional, (2) it is inherently distinctive or has acquired secondary meaning, and (3) the defendant's trade dress will likely cause confusion in the marketplace, often because it proves too similar. *See Roulo*, 886 F.2d at 935; *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1186 (7th Cir. 1989); *see also Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005); *Arlington Specialties Inc. v. Urban Aid, Inc.*, 2014 U.S. Dist. LEXIS 138909, 6 (N.D. Ill. Sept. 30, 2014), *aff'd Arlington Specialties*, 847 F.3d at 420; *E'Stephenie, Inc. v. Greek House Int'l*, 2006 U.S. Dist. LEXIS 112696, 15-16 (S.D. Ind. June 13, 2006); 1 McCarthy, *Trademarks and Unfair Competition* § 8.1 (4th ed.). Thus here, the court must assess if the underlying complaint contains a factual or legal basis for a claim of trade dress infringement that may trigger coverage.

A product feature is functional and thus not protected by trade dress "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019), *cert. denied*, 2019 U.S. LEXIS 7598 (Dec. 16, 2019); *accord Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 616 F.3d 722, 726 (7th Cir. 2010). Even if a feature isn't essential to the article's use or purpose or doesn't affect the article's cost or quality, the feature may still be functional if it is "a competitive necessity" that would put "competitors at a significant non-reputational-related disadvantage" if they could not use the feature. *Bodum*, 927 F.3d at 491 (citing *Specialized Seating*, 616 F.3d at 727 (product's design is functional when it "looks the way it does in order to be a better [product], not in order to be a better way of identifying who made it") (alteration in quotation)).

6

When a manufacturer admits that its product's features are functional, even when they affect quality or aesthetic appeal without contributing to the overall identification of the product's source, the product remains ineligible for trade dress protection. *Arlington Specialties*, 847 F.3d at 420 (noting that a choice of features made for aesthetic appeal is not inherently non-functional because attractiveness is a kind of function); *Specialized Seating*, 616 F.3d at 727-28 (no trade dress when "[a]ll of the claimed features are functional; none was added to produce a distinctive appearance that would help the consumer identify the product's source"). For instance, one manufacturer might pick aluminum when another manufacturer selects iron to design a park bench; though these different metals might result in a different appearance or aesthetic, the metal designs have different advantages and disadvantages that have nothing to do with the source of the bench. Such a feature would not be deserving then of trade dress protection.

The law weighs several factors to determine whether a design feature is functional: (1) any utility patent, expired or unexpired, that involves or describes the feature's functionality; (2) the utilitarian properties of the product's unpatented design elements; (3) advertising that touts the utilitarian advantages of the design features; (4) the dearth of, or difficulty in creating, alternative designs for the product's purpose; and (5) the effect of the design feature on the product's quality or cost. *Bodum*, 927 F.3d at 492.

When a party seeks to protect the overall appearance of its trade dress, and not merely trade dress in a particular feature of the product, the court's inquiry moves away from an itemized assessment of the functionality of each product feature, and instead focuses on the total appearance and combination of features. *See id.* (applying *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992)). Under this approach, the existence of one or more functional features doesn't necessarily render the entire product design functional. *See id.* at 492-93 (reasonable juror could conclude that "overall appearance" of a French press coffeemaker was non-functional, though several

7

features were functional); *Comput. Care*, 982 F.2d at 1071 (overall "combination and arrangement" of programmatic features resulting in reports of a particular design was non-functional though some elements of these reports were undoubtably functional). Despite some functional features, the overall design or dress of the product must still be primarily non-functional. *See Roulo*, 886 F.2d at 935; *Schwinn Bicycle*, 870 F.2d at 1186.

The court recognizes that the task of assessing the veracity of any trade dress claim is not before it; however, because defense or indemnity hinges on a claim for trade dress infringement, the court must assess whether there is any possibility that the state complaint alleged facts that either the trailer's design features are primarily non-functional, or the overall look of the trailer is non-functional. Although functionality is a question of fact, "the bar for functionality is so low that it can often be decided as a matter of law." *Arlington Specialties*, 847 F.3d at 420.

This state complaint contains no explicit allegation of trade dress infringement. Instead, the complaint casts BizBox's dispute against ATC as a contract dispute. Still, because legal conclusions aren't required to be pleaded in a complaint, *see Iqbal*, 556 U.S. at 678-79, BizBox's legal characterization of its allegations isn't fatal to ATC's coverage claim. The court must look beyond mere titles and labels to the nature of the complaint's factual allegations.

BizBox asserts that the trailer in question is "distinct in its design and comprises a unique combination of features that render its functionality and appearance unique, as a whole" (ECF 4, Ex. C ¶ 7). It goes on to allege that "[i]t is the sum of these proprietary unique combination of features consistently built into each BizBox that makes the design unique in both look and operation and readily recognizable and has caused the BizBox [trailer] to be distinguished in the marketplace over its 8+ years of existence in the marketplace" (*Id.*). ATC points only to this general allegation, but "simply using conclusory words like 'unique' and 'recognizable' does not make it so." *Plum Mrkts., LLC v. Compass Grp. USA, Inc.*, 2021 U.S. Dist. LEXIS 18572, 5 (N.D. Ill. Feb. 1, 2021).

Indeed, the complaint specifically identifies a non-exclusive list of the trailer's "unique combination of features;" and, for nearly each feature listed, states how it improves the trailer's utility: for example, the "unique and specific design and layout of aluminum frame glass windows and opening doors . . . *to allow multiple access and egress points for the flow of traffic/people in and out*" of the trailer; the "use of two batteries inside the storage room *to operate the LED puck lights and the generator*;" the "black rubber coin flooring . . . *to allow for non-slip and cleaning*;" the "AC unit placed in the center of the roof . . . *to distribute cool air evenly*;" "rear aluminum glass fold-out doors to *allow a third access and egress point*;" "white aluminum rivitless [sic] walls and ceilings that *can be wrapped with graphic vinyl for branding*;" and the "unique metal barrier . . . *that encloses the side opening fold down hinged deck*" (ECF 4, Ex. C ¶ 9) (emphases added). There are more. The design features that make BizBox's trailer unique are pleaded, almost to a one, as functional features, not primarily non-functional features.

Even seemingly aesthetic design features have functional attributes. For instance, the "white aluminum metal-wrapped structural posts and frames between the aluminum framed glass windows and opening doors to create a seamless and unique look to the Bizbox" merely describes the purposeful use of a metal (attractive aesthetic) that is a form of function (ECF 4, Ex. C ¶ 9), *see Arlington Specialties*, 847 F.3d at 420, quite aside from the function of girding the trailer's structural posts. The only item that might be construed as non-functional aesthetic is the "curved fenderette design" of the wheel well that otherwise allows for the wheels to be hidden. Even the hiding of a wheel well may have a function, however.

The court pauses to recall that, when a party claims trade dress infringement in an entire product, and not just in a product feature, the inquiry shifts from an itemized accounting of each functional and non-functional feature to an examination of the overall appearance and combination of features. *See Bodum*, 927 F.3d at 492. Acknowledging that the existence of one of more functional features does not necessarily render the entire product functional, the overall design of the product

must still be primarily non-functional. *See Roulo*, 886 F.2d at 935; *Schwinn Bicycle*, 870 F.2d at 1186. The factual and non-conclusory allegations here describe an overwhelmingly functional design.

In BizBox's complaint, the allegation that ATC cites explicitly states that the trailer "comprises a unique *combination of features* that render its *functionality and appearance* unique, *as a whole*." And "[i]t is *the sum* of these proprietary unique *combination of features* consistently built into each BizBox that makes the design unique in both *look and operation* and readily recognizable." Despite ATC's argument to the contrary, this summary assertion doesn't suggest—based on the pleaded facts—that the trailer's overall design, even if comprised of a combination of functional and non-functional features, somehow reflects a primarily non-functional uniqueness "that would help consumers identify the product's source." *Specialized Seating*, 616 F.3d at 728. This provision instead states that the sum of primarily functional features is a unique design precisely because of the design's look and operation—thus one married to and dependent on function rather than one merely "ornamental, incidental, or arbitrary." *TrafFix*, 532 U.S. at 30.

In *Specialized Seating*, 616 F.3d at 724, this circuit examined the functionality of an alleged knockoff folding chair. The court concluded that all design features were functional as they "represent[ed] different compromises along the axes of weight, strength, kind of material, ease of setup, ability to connect…the chairs together for maximum seating density, and so on." *Id.* at 727. Because "[a]ll of the claimed features were functional" and "none was added to produce a distinctive appearance that would help consumers identify the product's source," the chair was not eligible for trade dress protection. *Id.* at 728. Had the original chair manufacturer "placed a cutout in the backrest, or given it a distinctive pattern," its manufacturer might have been entitled to pursue a claim for trade dress infringement. *Id.* at 727. Like *Specialized Seating*, BizBox doesn't assert that any unique feature is soundly non-functional or that the overall design proves primarily non-functional. Instead, the trailer's features, like those of the folding chair, serve descriptively functional purposes other than source

10

identification. It thus may not prove surprising that BizBox has characterized its claim as one based in contract, not trade dress infringement.

Further in *Bodum*, 927 F.3d at 492, this circuit concluded that the overall look of a French press coffee maker was non-functional, despite having some clearly functional features, when an expert testified about the non-functionality of the design elements, like the dome-shaped lid and the shape of the handle, because these design features conferred no cost or quality advantage in the product. *Id.* at 492-93. This conclusion that the overall look and appearance of the coffee maker was non-functional was bolstered by the company's advertising, which focused on the classic look of the design as opposed to the functionality of the features. *Id.* at 493. The court noted "to establish it has a valid trade dress, [the company] did not have to prove that something like a handle does not serve any function. It merely needed to prove that preventing competitors from copying the . . . particular design would not significantly disadvantage them from producing a competitive and cost-efficient French press coffeemaker." *Id.* at 492 (citation omitted). But here BizBox's complaint remains ever focused on function or appearance as it dovetails with function, not like the coffeemaker in *Bodum* focused on non-functional appearance.

Because functional designs and features aren't protected by trade dress infringement, BizBox's complaint doesn't trigger a duty to defend by Westchester under the personal and advertising provision of ATC's insurance policy. The court must then grant Westchester's motion to dismiss.

C. *The Alleged Injury Didn't Occur Because of an Advertisement as the Policy Requires.*

The policy defines advertisement as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers" (ECF 4, Ex. A § V(1)). In determining whether ATC's actions fall within the scope of the term "advertisement" as defined in the policy, the court looks to the plain and ordinary meaning of this provision. *See Property-Owners*, 219 F.Supp.3d at 872.

11

The words "notice," "broadcast," and "publish" remained undefined by the policy. "Notice" means "a written or printed announcement." Notice, Merriam-Webster, https://www.merriam-webster.com/dictionary/notice (last visited Feb. 12, 2021). Additionally, "broadcast" means "to send out or transmit (something, such as a program) by means of radio or television or by streaming over the Internet" or "to make widely known." Broadcast, Merriam-Webster, https://www.merriam-webster.com/dictionary/broadcast (last visited Feb. 12, 2021). "Publish" means "to make generally known" or "to make public announcement of." Publish, Merriam-Webster, https://www.merriam-webster.com/dictionary/publish (last visited Feb. 12, 2021). The court notes that an interpretation of the word "broadcast" to mean "to make widely known" would render the word "publish" superfluous, so the court disregards this definition in interpreting "broadcast." *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp.*, 762 F.3d 673, 679 (7th Cir. 2014) ("[W]e attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous.").

ATC argues that the knockoff trailer is an advertisement because it has ATC's logo affixed to it (as seen in ECF 4, Ex. C ¶ 37), regardless of the plain meaning of the words "notice," "broadcast," and "publish." Of course, the offending trailer isn't a notice, much less one that is broadcast or published. *See, e.g.*, *United States Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 152 (2d Cir. 2016) ("As a matter of common sense, there is a difference between the placement of a counterfeit brand label on a handbag and the act of soliciting customers through printed advertisements or other media."). The ATC logo may serve a notice, but for one customer and not anything that could be transmitted by way of the media or even made widely known. *Cf. Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 737 (7th Cir. 2002) (business letters sent on letterhead with an infringing trademark were advertisements because they were targeted at the company's limited commercial audience and resulted in unlawful profits); *St. Surfing, LLC v. Great Am. E&S Ins. Co.*, 776 F.3d 603, 611 (9th Cir. 2014) (affixing a logo on a product displayed to the general public in a retail store constituted

12

advertising under California state jurisprudence). ATC cannot establish that the placement of its logo on the knockoff trailer was for the purpose of making its pitch widely known.

Another point underscores this one. The underlying complaint contains no facts that could possibly support the conclusion that the alleged injury resulted from ATC's logo on the knockoff trailer. Westchester's policy coverage explicitly extended its coverage, and thus a duty to defend, to damages "the insured becomes legally obligated to pay . . . because of '…advertising injury'" (ECF 4, Ex. A, Cover. B(1)(a)). The injury must be a consequence of the advertisement and not a condition precedent. Thus, for an injury to be covered under the policy, the underlying complaint would have to plead that the advertisement was the cause of the injury, and not merely that an advertisement occurred, and an injury occurred.

The injury alleged in the underlying complaint wasn't because of ATC's affixture of its logo to the knockoff trailer. Instead, the complaint pleads that ATC allegedly abused its preexisting business relationships with BizBox customers and tried to sell knockoff trailers and perhaps also to undersell. The underlying complaint repeatedly asserts that ATC sold the knockoffs to BizBox customers, for whom ATC had previously manufactured BizBox trailers (ECF 4, Ex. C ¶¶ 28, 34, 48) and from which ATC would receive requests for less expensive knockoffs (*Id.* ¶ 29). The complaint does not allege any facts that would raise the possibility that a customer saw a knockoff trailer out in public with ATC's logo, noticed ATC's logo, and was influenced to buy its product from ATC. Rather, the complaint alleges that ATC used its preexisting business relationships with BizBox customers to sell the product to former BizBox customers at BizBox customers' request. (*Id.* ¶ 28). Simply put, the complaint does not allege any facts that could possibly support the assertion that the injury in the underlying action was because of the alleged advertisement, much less that it was an advertisement at all. The motion to dismiss must be granted accordingly.

In conclusion, because an insurer's duty to defend is defined by the scope of the policy and an insurer is not obligated to defend against a claim that is clearly not covered by the policy, ATC's complaint seeking a declaratory judgment that Westchester has a duty to defend it in the underlying state court action fails to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). Because the court has concluded that Westchester has no duty to defend or indemnify ATC in the underlying lawsuit, the court need not address the knowing violation exclusion.

## CONCLUSION

For the forgoing reasons, the court GRANTS Westchester's motion to dismiss (ECF 6) and DIRECTS the clerk to enter judgment in its favor. This order terminates the case.

SO ORDERED.

February 25, 2021	*s/ Damon R. Leichty*
	Judge, United States District Court